# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUBY GAIL DUNN, | ) | 1:09cv0530 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Ruby Gail Dunn ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an initial application for SSI on January 16, 2004. After a hearing, Administrative Law Judge Peter F. Belli issued a decision finding Plaintiff not eligible for SSI

---

[1] The parties consented to the jurisdiction of the Magistrate Judge for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

payments on May 9, 2005.  AR 55-62.  The Appeals Council reportedly denied review and Plaintiff took no further action.  AR 18.

In March 2006, Plaintiff protectively filed another application for SSI, alleging disability since June 2003 due to chronic bowel syndrome, social anxiety disorder and depression.  AR 80-92.  After Plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ").  AR 49, 63, 64, 65-69, 73-77.  On September 13, 2007, ALJ Laura Speck Havens held a hearing.  AR 357-376.  She denied benefits on February 22, 2008.  AR 15-34.  The Appeals Council denied review on December 12, 2008.  AR 7-10.

Hearing Testimony

ALJ Havens held a hearing on September 13, 2007, in Stockton, California.  Plaintiff appeared with her attorney, Jeffrey Milam.  Vocational expert ("VE") Stephen Schmidt also appeared and testified.  AR 359.

Plaintiff testified that she was born in 1956.  She has a high school education.  She can read with glasses.  AR 363.  She can do simple adding and subtracting.  She has not worked since March 31, 2006.  She suffers from anxiety, depression, chronic bowel syndrome and lower back pain.  AR 364.

Plaintiff lives in an apartment with her son, daughter-in-law and three grandchildren.  Her grandchildren were 12, 10 and 8 at the time of the hearing.  AR 364.  Her daughter-in-law is on SSI.  Her son works, but is out waiting on knee surgery.  AR 365.

Plaintiff testified that she wakes up at 7:00 in the morning.  She is able to dress and bathe without help.  She does household chores when she can, but it takes her twice as long.  She does not cook, but washes dishes, mops, vacuums and does laundry.  She does not do any grocery shopping, gardening or yard work.  She does not have any hobbies.  She watches TV for most of the day.  She does not leave her room.  She and her husband walk a little bit very early in the morning.  He lives with her, too.  She can walk for about 20 minutes.  AR 366.

Plaintiff has a driver's license, but has not driven for a couple of years. She does not do anything outside of her home. She does not go to church or to the movies. She does not have any friends. AR 366.

Plaintiff testified that she does not have much of an appetite. She feels tired during the day. She sleeps about eight hours at night. AR 367.

Plaintiff sees Dr. Forno. She does not see anyone for mental health. She takes Seroquel, "Busaprom," Wellbutrin, Nexium, Lorazepam, and Baclofen. AR 367-68. She does not have any side effects from those medications. She sees the doctor once a month or sooner if she needs. AR 368.

Plaintiff testified that she can walk or stand about 20 minutes at one time. AR 368. She can sit about 30, 40 minutes. The most she can lift is 10 pounds. She feels pain in her stomach every day. Her back hurts. It is a sharp pain that comes and goes. At the most, her pain is seven on a scale from one to ten. AR 368-69.

Plaintiff has anxiety. She does not leave her room. She barely speaks to any family members in the household or her husband. She gets where she cannot breathe. Her head starts to go numb, then her ears, nose and lips feel tingling and she feels like she cannot breathe. AR 369. The medication helps, but it takes a long while. AR 369.

In response to questions from her attorney, Plaintiff testified that she takes Baclofen for her lower back. AR 369. She has trouble staying on her feet for long periods of time. The longest she can be on her feet at one time is 20 minutes. AR 370. She has problems with her kidneys and gallstones. She has stage three kidney disease and is going to see a specialist. She has lots of stomach pain. Sometimes she has to urinate a lot and sometimes she can "hardly go at all." AR 370. She has to urinate frequently about once a week. It lasts a whole day. AR 371.

Plaintiff remembered seeing a doctor from Social Security in October of 2006. She tried to do all the tests correctly and to the best of her ability. AR 371. Plaintiff felt like the doctor was against her from the first time she walked into the office. AR 372.

During the hearing, Plaintiff had her head pointed down at the desk with her cheeks resting on her hands. She did that because she does not like to be around people, she gets "all panicky and stuff" and she cannot breathe. AR 372.

The VE also testified in response to questions from the ALJ. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, with a high school education and no past relevant work. This person could sit six hours, stand six hours and walk six hours out of an eight hour day. This person also could lift and carry 50 pounds occasionally, 25 pounds frequently, and occasionally climb, balance, stoop, kneel, crouch and crawl. This person had a fair ability to deal with work stress and was able to understand, remember and carry out simple job instructions. AR 373. The VE testified that there are jobs in the state or national economy for such a person. AR 373-74. There would be 37,000 hand packer jobs, which is medium, SVP 2, unskilled. There would be 15, 000 jobs in laundry work, which is light, SVP 2, and 27,000 jobs as machine operator, which is medium, SVP 2. The VE testified that there was no work reduction in those jobs based on the "fair inability" to deal with work stress. AR 374.

At the end of the hearing, the ALJ planned to send Plaintiff for a psychiatric evaluation and an internal consultative examination. AR 376.

Medical Record

An electrocardiogram and chest x-rays in September 2003 were normal. AR 264-65. A November 21, 2003, esophagram or barium swallow was normal. AR 263. A December 2003 ultrasound of the thyroid showed nonspecific inhomogeneity of both thyroid lobes. AR 262.

A cervical spine x-ray taken March 1, 2004, was normal. AR 261. A March 31, 2004, x-ray of the lumbar spine was normal. AR 255. A bone density scan in April 2004 was normal. AR 252. A CT scan of the head on May 27, 2004, was not significant. AR 251. An x-ray of the right hip completed July 14, 2004, was normal. AR 246.

Beginning in late 2004 and continuing, Plaintiff saw Karin Forno, M.D., for complaints of anxiety, severe social anxiety, agoraphobia, insomnia, major depressive disorder and constipation. AR 192-201, 207-09, 214, 218, 220, 223, 225-26, 229, 231, 233, 235-38, 240-42, 286, 289, 294-95.

An x-ray of the cervical spine taken January 5, 2005, was normal. AR 239. X-rays of the right hip taken March 25, 2005, were normal. AR 227. X-rays of the lumbar spine taken May 31, 2005, were normal. AR 224. X-rays of Plaintiff's right shoulder and elbow taken July 5, 2005, were normal. AR 222.

A CT scan of Plaintiff's lumbar spine completed July 8, 2005, showed no disc hernia, but revealed degenerative change of the articular facets. She had a small amount of sclerosis involving the articular facets. AR 221.

A segmental pressure study of Plaintiff's legs completed November 14, 2005, was normal. AR 217. A study of Plaintiff's duplex extremity venous (bilateral) on November 15, 2005, was normal. AR 216.

On September 6, 2005, Plaintiff underwent a brief clinical screening at Stanislaus County Behavioral Health and Recovery Services by a licensed clinical social worker. Plaintiff complained of depression. On mental status, Plaintiff was oriented times three and depressed/anxious. She denied suicidal and homicidal ideation. She was diagnosed with major depressive disorder with psychotic features. AR 157.

In April 2006, Dr. Forno referred Plaintiff to a psychotherapist for her depressive disorder. AR 208.

On April 27, 2006, Lyle B. Forehand, Jr., M.D., a psychiatrist, provided a Complete Medical Report (Mental). Dr. Forehand indicated that Plaintiff had clinical findings of psychomotor retardation, profound anxiety leading to decreased short and long term memory and severely impaired concentration. She also had a sad affect. AR 281. She was diagnosed with major depressive disorder and generalized anxiety. She had been treated with Effexor, Wellbutrin, Ativan, Lithium and Bospar. Dr. Forehand opined that if Plaintiff was at home, she had tolerable anxiety while medicated, was less depressed, but still was afraid to leave the house. Her prognosis was poor and it was unlikely she ever would be able to compete in the open marketplace. AR 281.

On the same date, Dr. Forehand completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. He opined that Plaintiff had a good ability to use judgment,

fair ability to interact with supervisor(s) and function independently, and poor ability to follow work rules, relate to co-workers, deal with the public or maintain attention/concentration. She had no ability to deal with work stress. AR 282. She also had no ability to understand, remember and carry out complex job instructions. She had poor ability to understand, remember and carry out detailed, but not complex job instructions and poor ability to understand, remember and carry out simple job instructions. She had fair ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. Dr. Forehand indicated that Plaintiff could not drive safely or successfully take a bus. AR 283. She could manage benefits only with the help of her spouse. AR 284.

In June 2006, Dr. Forno noted that Plaintiff was overweight. AR 207.

An upper GI series completed on August 25, 2006, was normal. AR 202.

On October 18, 2006, Deborah von Bolschwing, Ph.D., a psychological assistant, conducted a psychological disability evaluation of Plaintiff. Dr. von Bolschwing indicated that Plaintiff was a poor historian, providing vague responses. AR 158. Plaintiff reported that she was limited in activities of daily living due to social anxiety and depression. She was unable to take a bus, drive a car, wash dishes, do laundry, prepare simple meals, or grocery shop unattended. AR 159.

On mental status examination, Plaintiff was alert and oriented to person, place, time and situation. Her affect was mildly restricted and her mood was neutral. Her insight and judgment appeared to be intact. AR 159. During the testing process, Dr. von Bolshwing noted that Plaintiff "engaged in may behaviors suggestive of decreased motivation and effort." AR 159. She stalled on timed tasks, provided approximate answers and failed to correctly complete very simple test items. However, her remote memory was grossly intact, she was able to write a simple sentence and she was able to maintain attention and concentration. Dr. von Bolshwing indicated that Plaintiff demonstrated less than adequate persistence, due to decreased effort and motivation. AR 159. Plaintiff's test results were considered to underestimate her actual cognitive ability. Dr. von Bolshwing noted that Plaintiff's IQ scores fell within the extremely

low range, but clinical observation and her test behavior suggested current intellectual functioning to "within at least the low average range." AR 160.

Dr. von Bolshwing diagnosed Plaintiff with malingering (cognitive symptoms). AR 160. Plaintiff's psychiatric symptoms appeared to be either in remission, or else well controlled by medication. AR 161. Dr. von Bolshwing opined that Plaintiff's level of impairment in her ability to follow/remember complex/detailed instructions or in her ability to maintain adequate pace or persistence to perform complex tasks was "unknown" because of decreased effort. Plaintiff had no other impairment in her work-related abilities. AR 161. Faith Tobias, Ph.D., a licensed psychologist, signed Dr. von Bolshwing's evaluation report. AR 162.

On October 28, 2006, S. K. Madireddi, M.D., completed an internal consultative evaluation. Plaintiff complained of social anxiety disorder, depression and inflammation of the back. AR 163. On physical examination, Plaintiff had full cervical spine range of motion in all planes. There was no tenderness to palpation of the cervical paraspinous muscles or upper shoulders. She had full range of motion of the upper extremities in all joints and 5/5 motor strength in all upper extremity motor groups. She had tenderness between L1 and L5 in the midline and paraspinous areas bilaterally to palpation over the lumbosacral spine. She had no trigger points or spasms. She had no tenderness to palpation at the SI joints, greater trochanters or ischial tuberosities. She had full range of motion of the bilateral hips, knees and ankles with 5/5 motor strength in all lower extremity muscle groups. AR 164. Dr. Madireddi diagnosed Plaintiff with a history of social anxiety disorder and depression. She also had back ache associated with "mildly abnormal lab findings." AR 164. She should be able to lift and carry 15 pounds frequently and 20 pounds occasionally. Other restrictions were not needed. AR 164.

On December 13, 2006, Craig A. Smith, M.D. a state agency medical consultant, completed a Psychiatric Review Technique form and opined that Plaintiff's impairment was not severe. Evangeline Murillo, M.D., affirmed the assessment on February 28, 2007. AR 166.

On December 15, 2006, a state agency medical consultant completed a Physical Residual Functional Capacity Assessment form. The consultant opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an

7

8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without limitation. AR 181. She frequently could balance, stoop, kneel, crouch and crawl. She occasionally could climb ramps/stairs, but could never climb a ladder, ropes or scaffolds. AR 182. She did not have any manipulative, visual, communicative or environmental limitations. AR 183-84.

On December 29, 2006, Dr. Forno advised Plaintiff to try to get out of the house more for her anxiety/agoraphobia. AR 194.

An x-ray of Plaintiff's abdomen taken on January 2, 2007, showed a moderate amount of stool throughout the colon and the bowel gas pattern was nonspecific. AR 193.

In March 2007, Plaintiff complained of abdominal pain with diffuse tenderness. Dr. Forno noted that Plaintiff's anxiety was still problematic, but manageable. AR 295.

An abdominal sonogram on March 19, 2007, revealed multiple gall stones. Plaintiff was diagnosed with cholelithiasis. AR 296.

On May 3, 2007, Plaintiff reported that her anxiety was getting worse. Dr. Forno increased Plaintiff's Seroquel. Plaintiff also reported constipation and Dr. Forno recommended Miralax. AR 294.

On June 7, 2007, Plaintiff reported that the increased Seroquel helped her anxiety. She also reported that the Miralax helped the constipation. AR 289.

On August 29, 2007, Robert L. Morgan, Ph.D., a clinical psychologist, completed a comprehensive psychological evaluation. Plaintiff complained of severe depression and anxiety being around people. AR 298. During the day, Plaintiff reported being isolated in her room. She watched some television during the day. She bathed or showered 4 times a month. She did not engage in any outdoor activities and had not set foot outside her apartment for a month. AR 301. She had no friends and did not participate in any group or social organization. AR 302.

On mental status examination, Plaintiff was cooperative with mild psychomotor agitation. She sat with her head bowed and engaged in some hand wringing. She had no evidence of malingering or factitious behavior. Her fluency and vocabulary were considered to be low average. She had a severely depressed mood with a flat, fixed affect. AR 302. Her thought

processes were coherent, cohesive, organized, logical and goal-directed.  She denied auditory or visual hallucinations and denied suicidal or homicidal ideation.  AR 302.  She was alert, ambulatory and oriented to person, place, time and situation.  Her IQ was estimated to be borderline.  Her fund of knowledge was limited.  She was unable to engage in serial 7s or spell "world" backwards.  Her abstract thinking was impaired.  She did not know the meaning of "don't count your chickens before they hatch" or "still waters run deep."  AR 303.  Her ability to identify similarities and differences was impaired.  She did not know ways in which an apple and an orange or a boat and an automobile were alike.  Her insight and judgment were impaired.  She did not know what she would do if she were to come home and find that a water pipe had burst in her kitchen.  AR 303.  On psychological testing, Plaintiff received a score of 48 on the Beck Depression Inventory-II, which was indicative of severe depression.  AR 303.  She completed 12 of 15 on the Rey 15-Item Memory Test.  This suggested adequate motivation and provided no evidence of "malingering of an impairment in her memory."  AR 304.

Dr. Morgan diagnosed Plaintiff with major depressive disorder, recurrent, without psychotic features, severe, and social phobia.  She had a provisional diagnosis of borderline intellectual functioning.  Dr. Morgan assigned her a Global Assessment of Functioning ("GAF") of 50 with a report of serious symptoms.  AR 305.  He opined that her affective disorder was characterized by a pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of both guilt and worthlessness and difficulty in concentration and in thinking.  Her anxiety disorder was characterized by a persistent, irrational fear of a specific situation that resulted in a compelling desire to avoid the specific situation, particularly relative to social interaction.  AR 305.  Dr. Morgan opined that Plaintiff was presenting with a marked impairment in her activities of daily living and in her social functioning.  The results of the mental status examination suggested a marked impairment in her concentration, persistence and pace.  AR 306.  Her prognosis was poor.  AR 306.

On August 29, 2007, Dr. Morgan also completed a Psychiatric Review Technique form.  He opined that Plaintiff met the listing for an affective disorder.  She had a disturbance of mood accompanied by a depressive syndrome characterized by anhedonia or pervasive loss of interest

in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking. AR 308. Dr. Morgan also opined that Plaintiff met the listing for an anxiety-related disorder. AR 309. She had a persistent irrational fear of a specific object, activity or situation which resulted in a compelling desire to avoid the dreaded object, activity, or situation. AR 309. Dr. Morgan concluded that Plaintiff had marked restriction of activities of daily living, marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace. She had one or two episodes of decompensation, each of extended duration. AR 310.

On October 16, 2007, Plaintiff saw Dr. Forno for "anxiety attacks." AR 242. Plaintiff's affect was flat, but anxious at the same time. Dr. Forno diagnosed Plaintiff with severe social anxiety and panic attacks. Dr. Forno noted "unable to work." AR 242.

On October 31, 2007, Miguel Hernandez, M.D., completed a comprehensive internal medicine consultative evaluation. Plaintiff's chief complaints were anxiety disorder, major depression, irritable bowel syndrome and chronic low back pain. AR 311. She reported that she could generally stand, walk and sit okay. Her medications included Seroquel, BuSpar, Wellbutrin XL, Nexium, lorazepam (as needed), Baclofen (as needed) and Murelax powder (as needed). AR 312. Following a physical examination, Dr. Hernandez diagnosed Plaintiff with anxiety disorder, major depression, irritable bowel syndrome and chronic low back pain, suspect mild osteoarthritis. AR 315. Plaintiff could stand and walk about six hours in an eight-hour workday with routine breaks. She could sit six hours in an eight-hour workday with routine breaks. She could lift or carry 20 pounds occasionally, 10 pounds frequently. She had no postural or manipulative limitations. Her environmental restrictions were attributable to her major depressive and anxiety disorder. AR 315.

On October 31, 2007, Dr. Hernandez completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. Dr. Hernandez opined that Plaintiff could lift and carry 21 to 100 pounds occasionally and up to 20 pounds frequently. AR 316. She could sit for an hour at one time without interruption, stand for two hours without interruption and walk for two hours without interruption. She could sit 4 hours total in an 8-hour workday, stand 4 hours

total in an 8-hour workday, and walk 3 hours total in an 8-hour workday. She did not require a cane to ambulate. AR 317. She frequently could reach, handle, finger, feel and push/pull with both of her hands. She occasionally could operate foot controls with her right and left foot. AR 318. She occasionally could climb stairs, ramps, ladders or scaffolds. She occasionally could balance, stoop, kneel, crouch and crawl. None of her impairments affected hearing or vision. AR 319. She occasionally could tolerate exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat and vibrations. She frequently could tolerate exposure to operating a motor vehicle. AR 320. She could tolerate moderate office noise. AR 320. She could shop, could travel without a companion, could ambulate without a wheelchair, walker, canes or crutches, could walk a block at a reasonable pace on rough or uneven surfaces, could use standard public transportation, could climb a few steps at a reasonable pace with the use of a single hand rail, could prepare a simple meal and feed herself, could care for personal hygiene and could sort, handle and use paper/files. AR 321.

On November 15, 2007, Manolito Castillo, M.D., a psychiatrist, conducted an adult psychiatric evaluation. Plaintiff's social interaction with the evaluator was normal and she put forth good effort. Her speech and psychomotor activity was normal and she had good eye contact. Plaintiff was oriented to the month, date, year and city. She was able to spell "world" backwards and recite the days of the week in reverse. She could perform serial three subtractions. Her memory was intact. When asked about similarities between an apple and an orange, Plaintiff stated "They are fruit." AR 324. She did not know the meaning of "Don't cry over spilled milk." AR 324.

Dr. Castillo observed some mild anxiety during the assessment. Plaintiff's thought processes were organized and she was not exhibiting florid or subtle psychotic behavior. AR 324. She reported taking care of chores, such as washing dishes, sweeping and doing laundry. Dr. Castillo diagnosed her with panic disorder with agoraphobia, generalized anxiety disorder, depressive disorder, not otherwise specified, rule out posttraumatic stress disorder. He assigned her a GAF of 60. AR 324-25.

Dr. Castillo believed that Plaintiff's mental illness remained poorly controlled. She had slight limitations in the ability to socially interact with others at an age-appropriate level. She had no limitations in the ability to understand instructions, sustain an ordinary routine without sustained supervision, or complete simple tasks. She had moderate limitations in the ability to complete detailed and complex tasks. She also had moderate ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule. She had no limitations in the ability to avoid normal hazards. She was capable of handling funds. AR 325.

On June 13, 2008, Dr. Forno prepared a letter (unsigned) of appeal on behalf of Plaintiff. Dr. Forno believed that Plaintiff was 100 percent permanently disabled due to severe social anxiety. Dr. Forno stated that Plaintiff was unable to interact with people and was unable to leave her home. She did not go out of the house for entertainment or to perform activities of daily living. She had been tried on multiple medications, including Seroquel, BuSpar, Wellbutrin, lorazepam, lithium, trazodone, Paxil and other medications without any response. Dr. Forno reported that psychiatrists have been consulted and their current recommendation was to have Plaintiff on Cellexa, in addition to Seroquel and lorazepam. Plaintiff had not responded to this treatment. Dr. Forno also stated that when Plaintiff appeared in the office, she made very poor eye contact and had a very flat affect. She interacted "to the absolute minimum with any of the staff" and with Dr. Forno. Plaintiff did not appear to be able to function and she was barely able to manage her own medications. AR 330.

ALJ's Findings

Prior to discussing the merits of Plaintiff's current claim, the ALJ noted that Plaintiff filed a previous application in January 2004. On May 9, 2005, ALJ Peter Belli considered the previous application and found that Plaintiff was not disabled. AR 18-19. The ALJ indicated that Plaintiff had, in effect, requested reopening of the prior decision because she alleged a disability onset date within the time period adjudicated by Judge Belli. AR 19. The ALJ explained that under the Social Security regulations permitted reopening a prior determination if the ALJ finds "new and material" evidence constituting "good cause." 20 C.F.R § 416.1488(b).

The ALJ found that no showing of "good cause" had been made and he declined to reopen ALJ Belli's decision. AR 19.

The ALJ then explained that under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the presumption of continuing nondisability did not apply because of changed circumstances. Specifically, there was a change in age category following ALJ Belli's decision. As such, the ALJ indicated that he must give effect to ALJ Belli's findings if there was no new, material evidence or a change in the law. AR 20.

After analyzing the current evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity. AR 20, 34. She had the severe impairments of obesity, kidney disease, anxiety and depression. AR 34. She retained the residual functional capacity ("RFC") to perform a wide range of work at the light exertional level, with a limitation to simple, routine, repetitive tasks. AR 23, 33, 34. Given her age, education and RFC, the ALJ relied on Rule 202.13 of the Medical-Vocational Guidelines ("Grids") to conclude that Plaintiff was "not disabled." AR 33, 34.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's

findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (obesity, kidney disease, anxiety and depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) does not have past relevant work; and (5) the Grids direct a finding of "not disabled." AR 14-19.

Plaintiff argues that the ALJ failed to sustain the Commissioner's burden at step five.

**DISCUSSION**

A.   Res Judicata

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848

14

(9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez,* 844 F.2d at 693; Acquiescence Ruling ("AR") 97-4(9). For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing nondisability. *Chavez*, 844 F.3d at 693.

However, even where the claimant is able to overcome the presumption of nondisability, certain of the prior findings are entitled to some res judicata consideration. Prior determinations of RFC, education and work experience are entitled to res judicata absent new and material evidence on the issue. *Chavez,* 844 F.2d at 694. "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97-4(9).

The existence of changed circumstances only overcomes the presumption of continuing nondisability. It does not preclude the application of res judicata to other findings. As explained above, even though the presumption has been overcome, the RFC finding is still subject to res judicata absent new and material evidence that warrants a change.

B.      Step Five Determination

Plaintiff argues that the ALJ failed to carry the Commissioner's burden at step five because the ALJ failed to properly determine if Plaintiff's non-exertional (mental) impairments significantly limited the range of work she is able to perform before applying the Grids.

To assist in the step-five determination, the Social Security Administration established the Medical-Vocational Guidelines ("Grids"), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Hoopai v. Astrue,* 499 F.3d 1071,1075 (9th Cir. 2007) (citing *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983)). When the Grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the

claimant could perform." *Id.*  When the Grids do not match the claimant's qualifications, the ALJ can either (1) use the Grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir.1988).  The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

At step five, the ALJ determined that Plaintiff's non-exertional impairments "do not significantly erode the base of jobs that the claimant is capable of performing."  AR 33.  Plaintiff's non-exertional impairments included a limitation to simple, routine, repetitive tasks.  AR 33.  Given that Plaintiff could perform light unskilled work, the ALJ reasonably concluded that Plaintiff's non-exertional limitations did not significantly erode the occupational base.  There is nothing to suggest that a limitation to simple, routine, repetitive work would overtake Plaintiff's ability to perform a wide range of light work.

Moreover, the Grids recognize that the ability to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to a substantial numbers of unskilled jobs.  20 C.F.R. pt. 404 subpt. P, app. 2, § 202.00(b).  A limitation to simple, routine, repetitive work is not inconsistent with the ability to perform unskilled work.  *See*, *e.g.*, *Rael v. Astrue*, 2010 WL 716219, *9 (E.D.Cal. Mar. 2, 2010) (unskilled work encompasses limitations to simple, repetitive tasks); SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions. . . .").  The ALJ therefore determined, consistent with *Desrosiers*, that Plaintiff's non-exertional limitations did not significantly erode the occupational base and did not preclude reliance on the Grids as a framework for determining disability.

Plaintiff does not challenge the RFC finding or the limitation to simple, routine, repetitive tasks.[3]  Instead, Plaintiff asserts that the ALJ erred in concluding that her non-exertional limitations did not significantly limit the range of work available because the ALJ improperly

---

[3]

relied on SSR 85-15. As Plaintiff explains, SSR 85-15 applies to "claimants who only suffer from non-exertional impairments." Opening Brief, p. 7. However, the ALJ did not rely solely on SSR 85-15 to find Plaintiff not disabled. Rather, the ALJ read Rule 202.13, along with SSR 85-15, to conclude that the occupational base was not significantly eroded by Plaintiff's limitation to simple, unskilled work. AR 33.

Plaintiff suggests in a footnote that even if SSR 85-15 is considered, the ALJ erred by failing to consider Dr. Castillo's moderate limitations of Plaintiff's ability to concentrate for at least two-hour increments, in order to maintain a regular work schedule. Opening Brief, p. 8. Plaintiff does not directly challenge the ALJ's RFC finding limiting Plaintiff to simple, routine, repetitive tasks. Instead, Plaintiff asserts that the moderate limitations under SSR 85-15 warrant erosion of the occupational base and do not support use of the Grids. However, even moderate limitations in concentration for extended periods would not preclude reliance on the Grids. *See*, *Hoopai*, 499 F.3d at 1077 (moderate depression not sufficiently severe non-exertional limitation; at least one physician opined that the plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule and to maintain regular attendance).

The ALJ therefore correctly relied on the Grids as a framework to direct a finding of non-disability. Having relied on the Grids, then, the ALJ was not required to obtain testimony from a vocational expert. *Hoopai*, 499 F.3d at 1076. This renders Plaintiff's argument that the vocational expert's testimony had no evidentiary value because it was based on an incomplete and incorrect hypothetical moot. Contrary to Plaintiff's suggestion, the ALJ did not rely on the vocational expert's testimony, but instead relied on the Grids.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Ruby Gail Dunn.

IT IS SO ORDERED.

Dated: **April 20, 2010**                     /s/ **Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE